SCOTT LUCKEY v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 23 December, 1909.)

1. Telegraph — Negligence — Death Message, Failure to Deliver — Measure of Damages—Evidence—Conduct and Conversation.

   Upon the *quantum* of damages recoverable for the negligent failure of defendant telegraph company to deliver to plaintiff a message announcing the death of his mother, requesting him to come, and giving date of the funeral, after showing that plaintiff had given his mother money to visit him at his residence in a different town and for other purposes, that plaintiff visited her, and the affectionate and kindly feelings existing between them,

LUCKEY *v.* TELEGRAPH COMPANY.

it is competent for plaintiff to testify to a conversation between them had at her home the last time he had seen her alive, about a week before her death, to the effect that he had promised, at her solicitation and request, that if possible he would visit her should she become worse, and have him notified.

**2. Same.**

Upon the *quantum* of damages recoverable by a son in his suit against a telegraph company for the negligent failure to deliver a message announcing the death of his mother, asking him to come, and stating the hour of the funeral, it is competent to show the feeling between the mother and son as a fact directly relevant to and embraced in the issue, and also the conduct of the parties towards each other and conversations between them tending to show such feelings at the last time they had met, when the son was leaving her on her sick bed, about a week before her death, the circumstances being such as to exclude any reasonable suspicion of their sincerity.

APPEAL from *Justice, J.,* July Term, 1909, of McDowell.

Action to recover damages for negligent failure to deliver a telegram. The evidence tended to show that the defendant company had negligently failed to deliver to plaintiff the following telegram: "Your mother died last night. Come home to-day. Will bury to-morrow." And by reason of said negligence plaintiff was prevented from being present at the time she was buried and being with the bereaved relatives, etc.

There was a verdict for the plaintiff, judgment on the verdict, and defendant excepted and appealed.

The facts are stated in the opinion of the Court.

*W. T. Morgan* for plaintiff.
*Avery & Avery* for defendant.

HOKE, J. It was admitted on the argument that the defendant company had negligently failed to deliver the message, and thereby prevented plaintiff being present till after the mother was buried; and the objection urged for error was to a ruling of the court on the reception of certain evidence affecting the issue as to the *quantum* of damages. The testimony tended to show that the plaintiff had been a dutiful son to his mother; that he had her to visit him at Old Fort, paying her expenses both ways; had supplied her with money, and that the association between them was affectionate and kindly; that, a short time before her death, having heard she was ill, he had visited her, and, with a view of showing the kindly sentiment existent between them, plaintiff was allowed, over defendant's objection, to introduce the following evidence:

Q. "What did your mother say to you at that time, with refer-

·ence to your coming back in case she got worse?" Defendant ·objects. Sustained.

Q. "What did you say to your mother, if anything, in reference to coming back to see her in case she got worse?" Defendant objects. Overruled. Defendant excepts. Third exception. A. "I told her to notify me if she got worse, and I would come back to see her."

Q. "When was that, with reference to your leaving, that you ·said that to her?" A. "It was just as I was fixing to leave, and I was standing by her bed."

Q. "What was she doing, if anything?" A. "She was lying in bed, talking to me."

Q. "What did you say?" A. "I said, 'Mother, if you get worse, and notify me, I will come back to you.'"

Q. "How far apart were you?" A. "I was stooping down over her, and she was lying in bed, and I had hold of her hand, fixing to leave."

And again: Q. "State what your mother said to you, Scott, when you told her good-bye, about a week before she died." Defendant objects. Overruled, and defendant excepts to both question and answer. Eighth exception. A. "She told me when I left that if she got worse she wanted me to come back and see her, and I told her I would come if I got the word in time, and ·she said she wanted me to come back and see the last of her, and I told her I would."

We are of opinion that the·evidence received was clearly competent. The state of feeling between the mother and son was a fact directly relevant to the issue and embraced in it; and where this is true, both the conduct of the parties towards each other and conversations between them tending to show such feeling are admissible, the limitation being that either or both should be, at à time, and under circumstance to exclude any reasonable suspicion of their sincerity. We have so decided at the present term, in the case of *State v. Draughan,* and decisions elsewhere of recognized authority, and text writers generally, are to the same effect. *Commonwealth v. Trefethen,* 157 Mass., pp. 180-188; *Trelawney v. Coleman,* 4 E. C. L., 1; Barnewell & Alderson, *ib.,* 13; Greenleaf on Evidence (16 Ed.), sec. 162d; · Wharton on Evidence, sec. 269; Taylor on Evidence, sec. 580; McKelvey on Evidence, pp. 207-208. In *Trelawney's case, supra,* it was held: "In an action for adultery, letters by the wife to the husband (while living apart from each other), proved to have been written at the time they bore date, and when there was no reason to suspect collusion, are admissible evidence, without

showing distinctly the cause of their living apart." And *Lord Ellenborough,* delivering the opinion, said: "I have no doubt that these letters were admissible evidence. What the husband and wife say to each other is, beyond all question, evidence to show their demeanor and conduct, whether they were living on better or worse terms. What they write to each other may be liable to suspicion, but when that is cleared up, that ground of objection fails. That was satisfactorily explained in the present case by proof of the letters being written at the time they bore date, and long before any suspicion of the wife's misconduct." And *Bayley, J.,* concurring, said: "I think these letters were properly received. When it is once established that the manner in which the husband and wife conduct themselves towards each other (when together) is admissible evidence, it follows that letters which in absence afford the only means of showing their manner of conducting themselves towards each other, are also admissible." In the citation from Greenleaf the author says: "So, also, statements describing one's fear, belief, cheerful or melancholy feelings, or the like, physical disgust, hostility or affection, and the like. On this principle, in actions for criminal conversation, it being material to ascertain upon what terms the husband and wife lived together before the seduction (or in any other case in which the feelings of either toward the other is material), their language and deportment towards each other, their correspondence together, and their conversations and correspondence with third persons, are original evidence." And so McKelvey (2d Ed.), on p. 260, says: "Where a condition of mind is involved, the court relies upon and admits as evidence what all men are accustomed to rely and act upon. The mind betrays its condition in manner and speech, and upon this must rest the conclusions of others with respect to it. It constitutes original evidence and not hearsay." And Taylor, speaking in reference to it, says, further: "That the question whether they are feigned or real is, for the jury." The authorities, therefore, are against the defendant's position, and the judgment must be affirmed.

No error.